UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY LOVE,

        Plaintiff,

vs.

        Case No. 04-CV-73133
        HON. GEORGE CARAM STEEH

COUNTY OF WAYNE, and
the WAYNE COUNTY SHERIFF,

        Defendant.

_____/

OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (#26),
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#27),
AND DISMISSING PLAINTIFF'S CLAIMS

This matter is before the court on plaintiff Kathy Love's motion for partial summary judgment as to liability only, and defendant County of Wayne's and the Wayne County Sheriff's motion for summary judgment, as to plaintiff's claim of interference with rights protected by the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.. A hearing on the motions was held on June 14, 2005. For the reasons set forth below, plaintiff's motion for partial summary judgment will be DENIED, defendants' motion for summary judgment will be GRANTED, and plaintiff's FMLA interference claim will be DISMISSED.

**I. Background**

Plaintiff filed her complaint on August 13, 2004 alleging she is co-employed by the defendants as a County Deputy Sheriff Corporal, and that her March 30, 2004 request for intermittent FMLA leave to care of her mother and son was approved by defendant Sheriff's

Department on April 16, 2004, and by defendant Wayne County on May 10, 2004. Plaintiff alleges that on June 1 and 30, 2004, she again asked for intermittent FMLA to care for her mother and son, but that this second request was wrongfully denied in a July 2, 2004 letter "due to your diagnosis being unacceptable (the diagnosis needs to be more specific)." Complaint, ¶ 10, at 3. Plaintiff alleges that the defendants' denial of her second leave request, and failure to avail themselves of a second opinion under 29 U.S.C. § 2613(c), constituted an actionable interference with plaintiff's FMLA rights. Plaintiff seeks declaratory relief that the denial of her request for intermittent FMLA leave was unlawful, an injunction enjoining the defendants from violating plaintiff's FMLA rights in the future, restoration of plaintiff's leave banks, and expungment of any disciplinary action taken against plaintiff as a result of the denial of her leave request, together with compensatory damages, liquidated damages, and reasonable attorney fees.

## II.  Record Evidence

On April 15, 2004, plaintiff submitted a written request for FMLA intermittent leave to care for her mother and son from March 30, 2004 through June 30, 2004. Defendant's April 21, 2005 Exhibit C. Plaintiff indicated in the request that she desired to use available sick leave during that period for any FMLA eligible leave. Id. On that same date, plaintiff also signed a "DEPARTMENTAL COMMUNICATION" form asking to use "sick time" or "no time" when on leave. Defendant's April 21, 2005 Exhibit C. Accompanying the request for leave were written certification forms dated April 15, 2004, each stating with regard to plaintiff's mother and son:

> Patient with chronic medical condition requiring physician monitoring/care. Employee is means of transport for patient to physician's office & her presence provides psychological comfort to patient.

Defendants' April 21, 2005 Exhibit E. Plaintiff's Sheriff Department Representative Betty

2

Boyd, in Human Resources, initially approved the request on April 16, 2004. Final approval was withheld, however, by County Human Resources representative ("HR") Tina Hiner as indicated in an April 23, 2004 Memorandum:

> The medical documentation for Corporal Love's leave request needs clarification. The health care provider has not indicated the medical conditions of her parents. I can not [sic] process this leave request until this information is provided.
>
> Also the forms are old. Attached are the new forms. Enclosed are the original forms.

Plaintiff's April 21, 2005 Exhibit 6. On May 3, 2004, at plaintiff's request, Dr. Robert Egan faxed a memo to Boyd:

> TO WHOM IT MAY CONCERN:
>
> KIJUAN PYLES IS THE SON OF MS. LOVE WHO HAS THE DIAGNOSIS ASTHMA.
>
> ELIZABETH DUERSON IS THE MOTHER OF MS. LOVE WHO HAS THE DIAGNOSIS OF HYPERTENSION AND ARTHRITIS.
>
> IF YOU HAVE ANY QUESTIONS PLEASE CALL THE NUMBER ABOVE.

Plaintiff's April 25, 2005 Exhibit 7. Hiner thereafter granted final approval of the April 15, 2004 leave request on May 10, 2004, but on May 31, 2004, the initial leave period through June 30, 2004 was reduced by Boyd by one month, through May 31, 2004, pursuant to a change in defendants' leave policy regarding intermittent leave.

      Plaintiff testified that, prior to May 31, 2004, her immediate supervisor Sergeant Walker told her that her FMLA intermittent leave would expire on May 30, 2004, according to a conversation Walker had with Personnel Officer John Asquini, and that plaintiff would be disciplined for abuse of sick leave if she did not present paperwork showing that her FMLA leave did not expire on May 30, 2004. Plaintiff's January 28, 2005 Deposition Transcript, at 77-79. Plaintiff testified that, in response to Sergeant Walker's request, she

called Department Representative Boyd, asking Boyd to clarify the situation for Walker. Id. at 81.

> A. (by Plaintiff) I called [Boyd] about Sgt. Walker telling me that I didn't have a leave. That's what John Asquini told him and that I had to use at least three days if I was on FMLA.
> I called Betty Boyd to get her to give John or Sgt. Walker some clarification, and she said that she would take care of it and she would talk to John when he returned. I believe he was on vacation during that week.
> She would talk to him when he returned.
>
> Q. What else did she advise you during that telephone conversation?
>
> A. I believe she told me there was going to be a new Sheriff's policy regarding the FMLA, and that she would inform me on what to do next.
>
> Q. Did she tell you what the new policy was going to be?
>
> A. No. She did tell me that it was going to include that we had to recertify every thirty days.
>
> Q. And that is for intermittent leave? Right?
>
> A. Yes.

Id. at 81-82. According to plaintiff, Senior Personnel Officer John Asquini told her on May 25, 2004 that "my leave period would be amended and I would have to recertify after the amended date." Id. at 80.

Plaintiff again submitted certification forms on June 1, 2004, indicating a need for intermittent FMLA leave for the period June 1, 2004 through September 1, 2004. Plaintiff's April 25, 2004 Exhibit 9. Similar to the forms submitted on April 15, 2004, the June 1, 2004 forms each read:

> Pt. with chronic medical condition which requires physician monitoring & care. Employee is means of transportation & her presence provides psychological comfort to patient.

Id.

Plaintiff testified that, on June 16, 2004, she again talked to Asquini:

4

> A. (by Plaintiff) He wouldn't accept my paperwork and told me that that was the reason why they wouldn't accept it and I had to take it back to the doctor and let him just put in those marks where they went.
>
> Q. He wouldn't accept the paperwork because there was not a NA or Not Applicable/slash through the things that didn't apply to you. Right?
>
> A. Or a slash.
>
> Q. Or a slash. Let's turn our attention to Exhibits No. 16 and 17, the Certificate of Health Care Providers. On June 16, 2004, you attempted to hand in paperwork, right?
>
> A. Right.
>
> Q. And John Asquini did not accept the paperwork. Is that right?
>
> A. Right.

Id. at 93-94. In contrast, Asquini testified that he told plaintiff that the medical facts she relied upon in the forms were "insufficient." John Asquini's January 26, 2005 Deposition Transcript, at 57-58.

Plaintiff continued in her testimony that Asquini specifically told her that form questions 5, 6, and 7, left blank, would need to be answered by her doctor. Plaintiff's January 28, 2005 Deposition Transcript, at 94. Question 5 asks "the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present Incapacity if different)[.]" Plaintiff's April 21, 2005 Exhibit 9. Question 6 asks "If additional treatments will be required for the condition, provide an estimate of the probable hours of such treatments[.]" Id. Question 7 asks questions related to the need for leave "because of the employee's own condition[.]" Id. Plaintiff testified that, consistent with Asquini's criticism of the lack of answers to questions 5-7, she had her doctor place "N/A"s in the forms, and resubmitted them on June 30, 2004 with an FMLA leave request. Plaintiff's January 28, 2005 Deposition Transcript, at 95-96. By letter dated July 2, 2004, plaintiff's request was denied:

5

> Be advised that your leave of absence submitted on June 30, 2004, has been DENIED. This is due to your diagnosis being unacceptable (the diagnosis needs to be more specific).
>
> If you have questions, please contact Mark Ulincy, Legal Advisor.

Plaintiff's April 21, 2005 Exhibit 10. Instead, Plaintiff contacted her Union, then filed this lawsuit on August 18, 2004.

Plaintiff asserts that, from June through August 2004, she used 20.5 hours of vacation time, 4 hours of personal time, and 16 hours of sick time in lieu of requested FMLA leave. See Plaintiff's April 21, 2005 Brief, at 6. Plaintiff testified with respect to the type of leave she wished to use in conjunction with her June 30, 2004 leave request:

> Q. Did you want to use sick or no time for your leave request dated June 30, 2004?
>
> A. (by Plaintiff) Yes. I wanted to use sick, vacation, whatever, you know.
>
> \*       \*       \*
>
> Q. Turning your attention back to your Leave of Absence Request Form dated June 30, 2004, and its Exhibit 15, did you want to substitute your sick leave hours for Family and Medical Leave, intermittent leave that is the subject of the June 30, 2004 leave request?
>
> A. I wanted to use any time that I could if I needed to.
>
> Q. That way you would have been paid for the days for the time you had off. Is that right?
>
> A. Right.

Plaintiff's January 28, 2005 Deposition Transcript, at 105-106. Plaintiff later testified:

> Q. Let me show you Exhibit No. 9. This is the form that you filled out on or about April 15, 2004?
>
> A. Yes.
>
> Q. And when you say there, "I will use sick time or no time", what did you mean by that?
>
> A. I wanted the opportunity to either use sick time or use -- be docked.

> Q. And use no time?
>
> A. Right.
>
> Q. And you thought you had a right to make that decision based upon how much time was required?
>
> A. Yes.
>
> Q. And is that what you would have indicated had you been given the opportunity on June 30, 2004?
>
> \* \* \*
>
> A. I would have asked the same thing, to use sick time or be docked. I didn't want to exhaust my vacation time for intermittent leaves, and then when I get ready to take a vacation, I don't have enough time because I've been docked from running to the doctor's office and other appointments with my mom and my son.

Id. at 123-124. Plaintiff admitted that she suffered no monetary losses as the result of the July 2, 2004 denial of recertification. Id. at 102

### III. Argument

In moving for partial summary judgment as to liability only on her FMLA interference claim, plaintiff argues that defendants' personnel policy change regarding intermittent leave requests, requiring recertification every 30 days, was not officially approved by the County's Personnel Office. Plaintiff thus asserts she was entitled to retain the March 30, 2004 through June 30, 2004 intermittent FMLA leave she was originally granted on May 10, 2004 by operation of estoppel, citing Sorrell v. Rinker Materials Corp., 395 F.3d 332 (6th Cir. 2005). Consistent with the estoppel argument, plaintiff also asserts that defendants were estopped from denying the June 2004 FMLA leave requests on the basis of "diagnosis being unacceptable (the diagnosis needs to be more specific)" in that Dr. Egan conveyed in the resubmitted certification forms dated June 1, 2004 that plaintiff's son and mother continued to suffer from the same "serious health conditions" diagnosed by Dr. Egan in his

7

May 3, 2004 faxed letter, asthma, and hypertension and arthritis, respectively. Plaintiff maintains it was "disingenuous" for the defendants to deny FMLA leave based on insignificant diagnoses given that Dr. Egan's May 3, 2004 fax remained on file, and was sufficient to allow the defendants to reasonably appraise plaintiff's leave request.

In moving for summary judgment of plaintiff's interference claim, defendants argue they lawfully implemented the new personnel policy requiring recertification after thirty days for intermittent leave, consistent with 29 U.S.C. § 2613(e). Defendants assert plaintiff simply failed to submit sufficient medical information to justify recertification. Defendants maintain they acted reasonably and in good faith, in light of plaintiff's vague submission, and consistent with defendants' invitation to plaintiff that she contact Legal Advisor Mark Ulincy if plaintiff had any questions. Defendants further argue that, even if plaintiff proves a technical FMLA interference claim, plaintiff is not entitled to any relief because plaintiff admitted at her deposition that she incurred no monetary damages, and plaintiff herself chose to be paid for, and indeed was paid for, time taken off during June through August of 2004 to care for her mother and son.

## IV. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,

8

323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### V.  FMLA

29 U.S.C. § 2612 of the FMLA provides in pertinent part:

(a) In general

(1) Entitlement to leave
Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

\*     \*     \*

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

\*     \*     \*

(c) Unpaid leave permitted
Except as provided in subsection (d) of this section, leave granted under subsection (a) may consist of unpaid leave. . . .

9

> (d) Relationship to paid leave
>
> (1) Unpaid leave
> If an employer provides paid leave for fewer than 12 workweeks, the additional weeks of leave necessary to attain the 12 workweeks of leave required under this subchapter may be provided without compensation.
>
> (2) Substitution of paid leave
>
> (A) In general
> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under subparagraph (A), (B), or (C) of subsection (a)(1) of this section for any part of the 12-week period of such leave under such subsection.
>
> (B) Serious health condition
> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C) or (D) of subsection (a)(1) of this section for any part of the 12-week period of such leave under such subsection, except that nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.

29 U.S.C. § 2612(a)(1)(C), (c), (d).

It is unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided for under the FMLA or FMLA regulations, or to discharge or otherwise discriminate against an employee for opposing a practice made unlawful by the FMLA and its regulations.  29 U.S.C. 2615(a)(1-2); Cavin v. Honda of America Mfg., 346 F.3d 713, 719 (6th Cir. 2003).  To prevail on an FMLA interference claim, the plaintiff must prove: (1) she was an FMLA "eligible employee"; (2) the defendant is an FMLA "employer"; (3) the employee was entitled to FMLA leave; (4) the employee gave the employer notice of the intention to take leave, and; (5) the employer denied the employee FMLA benefits to which she was entitled.  Cavin, 346 F.3d at 719.  Recovery under an FMLA interference claim requires additional proof that the employee was

10

prejudiced by the FMLA violation, either through the loss of compensation, benefits, or other monetary losses suffered as a "direct result" of the violation, or is otherwise entitled to equitable relief. Cavin, 346 F.3d at 726 (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 88-89 (2002) (citing 29 U.S.C. § 2617(a)(1)(A)(i)(I-II) and 29 U.S.C. § 2617(a)(1)(B)).

"Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA." Brenneman v. Medcentral Health System, 366 F.3d 412, 422 (6th Cir. 2004) (citing Hammon v. DHL Airways, Inc., 165 F.3d 441, 450 (6th Cir. 1999)). The employer may require the employee to timely provide certification by a health care provider. Brenneman, 366 F.3d at 422 (citing 29 U.S.C. § 2613(a)). If intermittent leave is requested to care for a son or parent having a serious health condition, a requested certification is sufficient if it states: (1) the date on which the serious health conditions commenced; (2) the probable duration of the conditions; (3) the appropriate medical facts within the knowledge of the health care provider regarding the conditions; (4) a statement that the employee is needed to care for the son or parent, and an estimate of the amount of time the employee needs to care for the son or parent; (5) the dates on which such treatment is expected to be given and the duration of such treatment; (6) a statement of the medical necessity for the intermittent leave and the expected duration of the intermittent leave; (7) a statement that the employee's intermittent leave is necessary for the care of the son or parent or will assist in their recovery, and; (8) the expected duration and schedule of the intermittent leave. 28 U.S.C. § 2613(b).

"The employer may require that the eligible employee obtain subsequent

11

recertifications on a reasonable basis." 28 U.S.C. § 2613(e). Generally, an employer may request certification no more often than every 30 days. See generally 29 C.F.R. § 825.308(a-c). "An employer's oral request to an employee to furnish any subsequent medical certification is sufficient." 29 C.F.R. § 825.305(a). "The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.308(d). "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any deficiency." 29 C.F.R. § 825.305(d). "If an employee submits a complete certification signed by the health care provider, the employer may not request additional information from the employee's health care provider. However, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification." 29 C.F.R. § 825.307(a).

> In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave [to care for a son or parent having a serious medical condition], the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under [§ 2613(b)] for such leave.

28 U.S.C. § 2613(c)(1).

## VI. Analysis

### A. Equitable Estoppel/ Opportunity to Cure under § 825.305(d)

It is undisputed that plaintiff was initially approved for intermittent FMLA leave from March 30, 2004 through June 30, 2004 upon submitting Dr. Egan's April 15, 2004

12

certifications and May 3, 2004 memo, conveying that plaintiff's mother suffered from chronic conditions of hypertension and arthritis, that plaintiff's son suffered from a chronic condition of asthma, and that each required plaintiff to transport them to their doctor for treatment and to provide psychological support. Defendants' April 21, 2005 Exhibit E; Plaintiff's April 25, 2005 Exhibit 7. Even if the defendants' policy change requiring recertification of intermittent FMLA leave every 30 days was not officially approved by the County's Personnel Office, Asquini's May 25, 2004 oral request that plaintiff recertify her FMLA leave did not violate the FMLA as a matter of law. See 28 U.S.C. § 2613(e); 29 C.F.R. § 825.308(a-c). Defendants were expressly authorized under the FMLA to ask plaintiff to recertify on May 25, 2004.

Plaintiff timely responded to the recertification request by submitting June 1, 2004 certification forms executed by Dr. Egan, recertifying that plaintiff's mother and son suffered from chronic medical conditions that required plaintiff's attention. 29 C.F.R. § 825.308(d); Plaintiff's April 25, 2004 Exhibit 4. In response, the FMLA required the defendants to advise plaintiff that her June 1, 2004 certification forms were incomplete, and to provide plaintiff with a reasonable opportunity to cure any deficiencies. 29 C.F.R. § 825.305(d). Construing plaintiff's and Asquini's conflicting deposition testimony in a light most favorable to plaintiff, Asquini complied with the FMLA when, on June 16, 2004, he told plaintiff that her June 1, 2004 certification forms were deficient because Dr. Egan had failed to answer with "slashes" or "N/A's" questions regarding "the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present Incapacity if different)," "[i]f additional treatments will be required for the condition, provide an estimate of the probable hours of such treatments," and the need for leave "because of the employee's own condition." Requiring plaintiff to answer these

13

questions was consistent with the FMLA. See 28 U.S.C. § 2613(b).

Again construing plaintiff's testimony in a light most favorable to plaintiff, Asquini told plaintiff that she could cure the deficiencies posed by the unanswered certification questions if plaintiff simply had Dr. Egan answer the questions with "slashes" or "N/A's." Plaintiff's January 28, 2005 Deposition Transcript, at 93-94. Plaintiff was given an opportunity to cure, as required by 29 C.F.R. § 825.305(d), proffering evidence that she timely complied with Asquini's June 16, 2004 instructions by submitting June 30, 2004 certification forms with "N/A" in answer to questions numbers 5 and 6. Plaintiff's April 21, 2005 Exhibit 9.

The court agrees with defendants' argument that defendants were not *required* by 28 U.S.C. § 2613(c)(1) of the FMLA to seek a second medical opinion, nor were defendants *required* by 29 C.F.R. § 825.307(a) of the FMLA to contact Dr. Egan to clarify or authenticate the June 1, 2004 certification submissions. See Sorrell, 395 F.3d at 337 (quoting with approval Rhodes v. Fed. Deposit Ins. Corp., 257 F.3d 373, 386 (4th Cir. 2001) and Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 860 (8th Cir. 2000) for the proposition that the FMLA does not impose an affirmative duty upon an employer under § 2613(c)(1) or 29 C.F.R. § 825.307(a) because the language of these provisions is merely permissive). Defendants did not violate the FMLA by failing to seek a second opinion or contacting Dr. Egan before denying recertification.

The problem, however, is that plaintiff's recertification for intermittent FMLA leave was denied on July 2, 2004, not for inadequate answers to questions 5-7 in the recertification forms, but on the basis that "your diagnosis [is] unacceptable (the diagnosis needs to be more specific)." Plaintiff's April 21, 2005 Exhibit 10 (emphasis added). Dr. Egan's May 3, 2004 diagnoses of plaintiff's mother, as suffering from chronic hypertension

14

and arthritis, and plaintiff's son, as suffering from a chronic condition of asthma, were found to be acceptable diagnoses by the defendants less than two month's earlier, on May 10, 2004. As argued by plaintiff, the Sixth Circuit has recognized that, under the right circumstances, an employer may be equitably estopped from challenging an employee's right to FMLA leave. Sorrell, 395 F.3d at 337 (citing with approval Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-494 (8th Cir. 2002); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 722-27 (2d. Cir. 2001); Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000)).

Plaintiff's position is that the defendants' are equitably estopped from denying plaintiff's June 1, 2004 recertification request based on unacceptable diagnoses for her mother and son. Federal principles of equitable estoppel apply where a claim is made under a federal statute such as the FMLA. Kosakow, P.C., 274 F.3d at 725.

> The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment. Whether equitable estoppel applies in a given case is ultimately a question of fact.

Id. (internal citations omitted). Construing the pleadings and record evidence in a light most favorable to plaintiff, particularly plaintiff's testimony that Asquini told her on June 16, 2004 that her June 1, 2004 certification forms were deficient because Dr. Egan had failed to answer questions 5-7 with "slashes" or "N/A's," reasonable jurors could conclude that the defendants are equitably estopped from denying plaintiff's recertification request based upon deficient diagnoses for plaintiff's mother and son because: (1) Asquini misrepresented that the June 1, 2004 recertification would be approved if plaintiff acquired the appropriate "N/A" and "slash" answers from Dr. Egan; (2) the defendants earlier misrepresented that

Dr. Egan's diagnoses of plaintiff's mother and son were specific enough to support plaintiff's April 15, 2004 request for intermittent FMLA leave; (3) plaintiff reasonably relied on these representations when submitting her documentation to support her June 1, 2004 FMLA recertification request, and; (4) plaintiff's reasonable reliance upon the misrepresentations resulted in her recertification being denied on July 2, 2004 for lack of specific diagnoses. Sorrell, 395 F.3d at 337 ; Kosakow, P.C., 274 F.3d at 725; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390. Reasonable jurors could also conclude on this record that the defendants denied plaintiff a reasonable opportunity to cure the perceived unacceptable diagnoses before denying recertification on July 2, 2004[1]. 29 C.F.R. § 825.305(d); Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

At the same time, construing the pleadings and record evidence in a light most favorable to the defendants, reasonable jurors could conclude from John Asquini's testimony that he in fact told plaintiff the "medical facts" she relied upon in the forms were insufficient because Dr. Egan failed to answer questions 5 and 6, as to both plaintiff's mother and son, regarding "the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present Incapacity if different)," and "[i]f additional treatments will be required for the condition, provide an estimate of the probable hours of such treatments." Plaintiff's April 21, 2005 Exhibit 9. These are each appropriate FMLA questions. See 28 U.S.C. § 2613(b). Reasonable jurors could then further conclude that plaintiff could neither reasonably rely upon the initial approval of her first intermittent FMLA leave request, nor on simply

---

[1] Defendants argue that the July 2, 2004 denial letter invited plaintiff to contact Legal Advisor Mark Ulincy. See Plaintiff's April 21, 2005 Exhibit 10. Reasonable jurors could not conclude that the July 2, 2004 letter was an invitation to cure perceived deficiencies with the diagnoses, as plaintiff's recertification request was "DENIED" in the same letter. Id.

answering form questions numbers 5 and 6 with "N/As" or "slashes," because Asquini gave plaintiff an opportunity to cure the unanswered questions 5 and 6 by providing appropriate medical facts, i.e. an estimate of the probable number of hours of treatment needed by plaintiff's mother and son. Plaintiff is not entitled to summary judgment as to liability only on a theory of equitable estoppel or denial of a reasonable opportunity to cure given the remaining disputed factual circumstances. Sorrell, 395 F.3d at 337 ; Kosakow, P.C., 274 F.3d at 725; 29 C.F.R. § 825.305(d); Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

### B. Denial of FMLA Benefit/ Monetary or Equitable Relief

Construing the pleadings and evidence in a light most favorable to plaintiff, as set forth in Section VI, A, and presuming for purposes of the parties' competing motions that plaintiff proves to a jury that the defendants are estopped from denying plaintiff's June 1, 2004 recertification request, and further presuming that the defendants denied plaintiff a right under 29 C.F.R. § 825.305(d) to cure the unacceptable diagnoses, defendants are entitled to summary judgment of plaintiff's FMLA interference claim because plaintiff cannot prove that: (1) she was denied FMLA benefits to which she was entitled, or; (2) that she is entitled to recover monetary damages or equitable relief. Cavin, 346 F.3d at 719, 726; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

Plaintiff admitted during her deposition that she has suffered no monetary damages as the result of the July 2, 2004 denial of her recertification. Plaintiff's January 28, 2005 Deposition Transcript, at 102. Plaintiff remains employed by the defendants, and has neither asserted nor proffered evidence that she was disciplined by the defendants for taking leave from June through August 2004. Plaintiff does not dispute that her requests for paid vacation leave, personal leave, and sick leave during the relevant period of June

17

1, 2004 through August 31, 2004 were granted by the defendants, affirmatively maintaining that she used 20.5 hours of paid vacation time, 4 hours of paid personal time, and 16 hours of paid sick time during this period. See Plaintiff's April 21, 2005 Brief, at 6.

29 U.S.C. § 2612(d)(2)(A) of the FMLA authorizes an FMLA eligible employee such as plaintiff to elect to substitute accrued paid vacation leave, personal leave, or family leave for unpaid FMLA leave. Plaintiff candidly testified that she intended to use paid sick leave or vacation time in conjunction with her June 1, 2004 recertification request, answering "right" to the question "[t]hat way you would have been paid for the days or the time you had off . . . [i]s that right?" Plaintiff's January 28, 2005 Deposition Transcript, at 105-106. Plaintiff's later deposition testimony that, given an opportunity on June 30, 2004, she would have again stated in a "DEPARTMENTAL COMMUNICATION" form, as she did on April 15, 2004, that she wanted to use paid "sick time" or unpaid "no time," does not conflict with her stated intent to use paid sick or vacation leave as intermittent FMLA leave, but "didn't want to exhaust my vacation time for intermittent leaves, and then when I get ready to take a vacation, I don't have enough time." Id. at 123-124. Plaintiff does not argue or proffer evidence that she exhausted her vacation leave bank during June through August 2004 by using paid vacation leave in lieu of unpaid FMLA leave she would have otherwise used to care for her mother and son.

To the contrary, plaintiff testified that she did not recall whether she provided care to her mother or son when she took 4.0 hours of vacation leave on June 1, 2004, .5 hours of vacation leave on August 17, 2004, and 8.0 hours of vacation leave on August 25, 2004. Id. at 107, 109, 111. Plaintiff also could not remember whether or not she used 4 hours of paid personal time on June 9, 2004 to care for her son or mother. Id. at 107. Plaintiff was off work from June 16, 2004 to August 1, 2004 as the result of injuring herself after falling

18

down. Id. at 108-109. Plaintiff testified that 8 hours of paid sick leave taken on August 18, 2004 was "for herself," although she was "not sure" whether she also took care of her mother or son that day. Id. at 109-110.

Had plaintiff's recertification been granted for the period June through August 2004, plaintiff would have been entitled to use her accrued paid leave as a substitute for unpaid FMLA leave, as she requested. Plaintiff has not produced evidence that she was ever denied a request to use paid leave to care for her mother or son. Plaintiff has not produced evidence that she was ever denied unpaid leave needed to care for her mother or son after exhausting accrued vacation days as a substitute for FMLA leave. Defendants are entitled to summary judgment as plaintiff cannot, on this record, prove to a reasonable jury that she was denied FMLA benefits to which she was entitled during the relevant July thorough August 2004 time frame. Cavin, 346 F.3d at 719, 726; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

Plaintiff admittedly cannot prove she is entitled to any monetary relief. Plaintiff's request for a court ordered expungement of any disciplinary action taken against plaintiff as a result of the denial of her leave request is without merit in the absence of any proof that such disciplinary action was ever taken. Plaintiff's request for declaratory relief for the denial of her request for intermittent FMLA leave that plaintiff believes was unlawful is rendered moot. Plaintiff is not entitled to entry of a sweeping injunction enjoining the defendants from violating plaintiff's FMLA rights in the future; the FMLA is self-effectuating. As reasoned herein, plaintiff is not entitled to equitable relief in the form of an order requiring the defendants to credit plaintiff with 20.5 hours of paid vacation time, 4 hours of paid personal time, and 16 hours of paid sick time as compensation for being denied unpaid FMLA leave. Defendants are entitled to summary judgment as plaintiff cannot

prove to a jury or this court that she is entitled to recover monetary damages or equitable relief.  Cavin, 346 F.3d at 719, 726; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

## VII. Conclusion

Plaintiff's motion for partial summary judgment is hereby DENIED.  Defendants' motion for summary judgment is hereby GRANTED.  Plaintiff's FMLA interference claims are hereby DISMISSED with prejudice in their entirety.

SO ORDERED.

                            s/George Caram Steeh  
                            GEORGE CARAM STEEH  
                            UNITED STATES DISTRICT JUDGE

Dated:  June 24, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 24, 2005, by electronic and/or ordinary mail.

                            s/Josephine Chaffee  
                            Secretary/Deputy Clerk